UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LARRY WILLIAMS,

Plaintiff,

v.

9:06-CV-1104
(DNH/GHL)

DON SCHULTZ,

Defendant.

---

APPEARANCES: OF COUNSEL:

LARRY WILLIAMS
Plaintiff, *Pro Se*
403 Ellis Street
Syracuse, NY 13210

HON. RORY A. McMAHON
Corporation Counsel for the City of Syracuse
Counsel for Defendant
233 East Washington Street
Room 301 City Hall
Syracuse, NY 13202

MARY ANNE DOHERTY, ESQ.
Assistant Corporation Counsel

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This *pro se* civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Larry Williams ("Plaintiff") alleges that Syracuse City Police Officer Don Schultz ("Defendant") violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution when, with discriminatory intent, Defendant subjected him to false arrest and false

imprisonment for the crime of harassment in the second degree on May 17, 2006. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court are (1) Plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56, and (2) Defendant's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 25, 27.) For the reasons that follow, I recommend that Plaintiff's motion be denied, and that Defendant's cross-motion be granted.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

Construed with the special leniency normally afforded to the pleadings of *pro se* civil rights litigants, Plaintiff's Complaint alleges as follows:

1. On May 17, 2006, at approximately 1:40 p.m., on the corner of Westmoreland Avenue and East Fayette Street in the City of Syracuse, Plaintiff (who is black) was approached by Syracuse Police Officer Lonnie Dotson (who is also black);[1]

2. Officer Dotson requested that Plaintiff provide his identification, which Plaintiff did;[2]

3. Officer Dotson told Plaintiff that (1) a woman (named Mikuel Adams) had alleged that Plaintiff had slapped her in his home (at 401 Ellis Street in the City of Syracuse), and (2) since no police officer was not present during the incident, he would issue Plaintiff an

---

1 (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

2 (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

appearance ticket;[3]

4. Officer Dotson then called Defendant (who was speaking to Ms. Adams at 401 Ellis Street) to tell him that he had located the man who had allegedly slapped Ms. Adams;[4]

5. Subsequently, Defendant (who is white) arrived at the scene and told Plaintiff to have a seat in a police car;[5]

6. Plaintiff asked, "Am I under arrest?";[6]

7. When Defendant responded no, Plaintiff said, "I'm not getting in the f***ing car unless I'm handcuffed";[7]

8. Defendant then handcuffed and searched Plaintiff, finding (in his pants pocket) a pen containing the residue of substance that appeared to be cocaine;[8]

9. When he handcuffed Plaintiff, Defendant possessed neither an arrest warrant nor a written complaint signed by Ms. Adams;[9]

10. Defendant then drove Plaintiff to 401 Ellis Street, where Ms. Adams signed a

---

[3] (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 9-10 [Ex. A to Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[4] (Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[5] (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[6] (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[7] (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[8] (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 8-10 [Ex. A to Plf.'s Compl.]; Dkt. No. 1, at 13 [Ex. B to Plf.'s Compl.].)

[9] (Dkt. No. 1, at 8-9 [Ex. A to Plf.'s Compl.]; Dkt. No. 1, at 14 [Ex. B to Plf.'s Compl.].)

complaint accusing Plaintiff of harassment in the second degree;[10]

11. Plaintiff was then taken to the Public Safety Building where he was charged and physically booked on that violation;[11]

12. Subsequently, the substance in the pen tested positive for the presence of cocaine, and Plaintiff was charged with criminal possession of a controlled substance in the seventh degree;[12] and

13. On August 30, 2006, the two charges against Plaintiff were effectively "dismissed" when Syracuse City Court Judge Jeffrey R. Merrill ruled that Defendant's initial handcuffing of Plaintiff (which constituted an arrest) was "illegal" because Defendant "lacked the statutory authority [under N.Y. C.P.L. § 140.10(1)(a)] to arrest [Plaintiff]" for harassment in the second degree in that "[t]he alleged harassment did not occur in the presence of [Defendant] and [he] did not have a warrant for [Plaintiff's] arrest."[13]

Plaintiff alleges that, as a result of Defendant's actions, he suffered (1) wrongful confinement in jail (first on the two charges described above, and then for violating the conditions of his parole), (2) "verbal assault[]," ineffective assistance, and discriminatory treatment by his defense attorney (David Zukher), (3) inadequate medical treatment in the Onondaga County Justice Center and/or the Jamesville Correctional Facility, and (4) lost

---

10 (Dkt. No. 1, at 13-14 [Ex. B to Plf.'s Compl.].)

11 (*Id*. at 14.)

12 (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 1, at 8 [Ex. A to Plf.'s Compl.]; Dkt. No. 1, at 12-14 [Ex. B to Plf.'s Compl.].)

13 (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 1, at 8, 10 [Ex. A to Plf.'s Compl.]; Dkt. No. 1, at 14-15 [Ex. B to Plf.'s Compl.].)

wages.[14]

Based on these alleged facts, Plaintiff asserts against Defendant claims of (1) false arrest under the Fourth Amendment, (2) false imprisonment under the Fourth Amendment, and (3) denial of equal protection of the laws under the Fourteenth Amendment on the basis of race.[15] As relief for these violations, Plaintiff requests three million dollars.[16]

**B. Summary of Undisputed Material Facts**

The undisputed record evidence before the Court (which includes Plaintiff's Verified Complaint and deposition transcript, and Defendant's affidavit) establishes each of the facts alleged above in Paragraphs 1 through 13, in addition to five other material facts:

1. On May 17, 2006, before Defendant spoke to Ms. Adams, Ms. Adams made a telephone call to the police complaining of harassment;[17]

2. Shortly thereafter, at approximately 1:40 p.m., when Defendant spoke to Ms. Adams (at 401 Ellis Street), she (1) identified Plaintiff by both name and physical description, (2) alleged that earlier that day Plaintiff had argued with her in his home, had become angry with her, and had threatened her with bodily harm, (3) alleged that Plaintiff had then struck her in the

---

[14] (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.]; Dkt. No. 1, at 8-10 [Ex. A to Plf.'s Compl.].)

[15] (Dkt. No. 1, ¶ 7 [Plf.'s Compl., alleging, "[The] first officer was black. [The] second [officer was] white [and] very discriminatory."].)

[16] (*Id*. at ¶ 9.)

[17] (*Compare* Dkt. No. 27, Part 2, ¶ 7 [Defs.' Rule 7.1 Statement, asserting that Ms. Adams called the police, complaining of harassment] *with* Dkt. No. 30, at 6-8 [Plf.'s Rule 7.1 Response, failing to deny the asserted fact in a matching numbered paragraph, and failing to support any denial with an accurate citation to record evidence]; *see also* Dkt. No. 27, Part 7, ¶ 3 [Schultz Affid.]; Dkt. No. 27, Part 8, at 5 [Ex. A to Schultz Affid., attaching his police report regarding incident].)

face with an open hand, causing her nose to bleed and her cheeks to hurt, and (4) alleged that Plaintiff had then stated that he would "kill her before the police got there";[18]

3. Not long after the alleged incident, using Ms. Adams' description of Plaintiff, Officer Dotson located Plaintiff on the corner of Westmoreland Avenue and East Fayette Street, which was near the incident;[19]

4. When Defendant subsequently spoke to Plaintiff, he noticed that Plaintiff's eyes were watery and red, leading him to believe that Plaintiff was under the influence of drugs;[20] and

5. The charges against Plaintiff were dismissed not on August 30, 2006, but at some point between August 30, 2006, and October 10, 2006.[21]

---

[18] (Dkt. No. 27, Part 7, ¶¶ 3-11 [Schultz Affid.]; Dkt. No. 27, Part 8, at 5 [Ex. A to Schultz Affid., attaching his police report regarding incident].)

[19] (Dkt. No. 27, Part 7, ¶ 11 [Schultz Affid., stating that Officer Dotson had told Defendant, while at 401 Ellis Street, that he had seen Plaintiff "in the area," and that Officer Dotson located Plaintiff "just down the road in the 2000 block of E. Fayette Street"]; Dkt. No. 27, Part 8, at 5 [Ex. A to Schultz Affid., attaching his police report regarding incident, which stated that Officer Dotson had told Defendant, while at 401 Ellis Street, that he had seen Plaintiff "in the area," and that "within several minutes" Officer Dotson had located Plaintiff "just down the road in the 2000 blk of E. Fayette St"]; Dkt. No. 27, Part 6, at 23 [Ex. C to Doherty Decl., attaching Plf.'s deposition transcript, stating that Officer Dotson had said to Plaintiff, while they were on the corner of Westmoreland Avenue and East Fayette Street, that the incident occurred "around the corner"].) In addition to relying on this undisputed record evidence, the Court can take judicial notice of the fact that the corner of Westmoreland Avenue and East Fayette Street in the City of Syracuse is located approximately two blocks, or less than a quarter of a mile, from 401 Ellis Street in the City of Syracuse. *See* Fed. R. Evid. 201(b),(c); *U.S. v. Hernandez-Fundora*, 58 F.3d 802, 811 (2d Cir. 1994); *Glisson v. Mantello*, 287 F. Supp.2d 414, 427 & n.3 (S.D.N.Y. Oct. 15, 2003); *Barnes v. U.S.*, 83-CV-3080, 1985 WL 5117, at *3 (S.D.N.Y. Dec. 18, 1985).

[20] (Dkt. No. 27, Part 7, ¶¶ 12, 14 [Schultz Affid.].)

[21] (Dkt. No. 25, Part 1, ¶ 10 [Plf.'s Rule 7.1 Statement]; Dkt. No. 25, Part 4, at 4-5 [Ex. C to Plf.'s Decl., attaching Parole Revocation Decision issued by N.Y. State Division of Parole].)

**C. Summary of Grounds in Support of Plaintiff's Motion**

Plaintiff's motion for summary judgment is premised on three arguments: (1) the August 30, 2006, decision of Judge Merrill precludes Defendant from arguing that he had probable cause to arrest Plaintiff (on the corner of Westmoreland Avenue and East Fayette Street) for assault in the second degree, thus warranting judgment for Plaintiff on his false arrest and false imprisonment claims; (2) because that arrest violated N.Y. C.P.L. § 140.10(1)(a), Defendant lacked probable cause to arrest and detain Plaintiff for assault in the second degree, thus warranting judgment for Plaintiff on his false arrest and false imprisonment claims; and (3) Defendant acted with the intent to discriminate against Plaintiff on the basis of his status as a parolee, thus warranting judgment for Plaintiff on his equal protection claim. (*See* Dkt. No. 25, Part 2, at 1-3 [Plf.'s Memo. of Law]; Dkt. No. 30, at 4-5 [Plf.'s Opp. Memo of Law].)

**D. Summary of Grounds in Support of Defendant's Cross-Motion**

Defendant's cross-motion for summary judgment is also premised on three arguments: (1) Plaintiff *consented* to the arrest and imprisonment in question, since he effectively requested Defendant to handcuff him; (2) in any event, Defendant *did* have probable cause to arrest Plaintiff since (a) that arrest did not occur until Ms. Adams signed a complaint accusing Plaintiff of harassment in the second degree (i.e., before that point in time, Plaintiff was merely "detained"), or (b) even if the arrest did occur upon handcuffing, the Second Circuit has made clear that probable cause may exist (for purposes of a claim under the Fourth Amendment) based on information obtained by the arresting officer advising him of a crime having occurred outside of his presence; and (3) in any event, as a matter of law, Defendant is protected from liability, with respect to Plaintiff's false-arrest and false-imprisonment, by the doctrine of qualified

immunity. (Dkt. No. 27, Part 9, at 7-14 [Defs.' Memo. of Law].)

## II. APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[22] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[23]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[24] The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[25] Rather, "[a] dispute regarding a material fact is

---

22 A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

23 *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

24 Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

25 *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere

*genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[26]

## III. ANALYSIS

### A. Plaintiff's Motion for Summary Judgment

To the extent that Plaintiff argues that the August 30, 2006, decision of Judge Merrill precludes Defendant (pursuant to the doctrine of collateral estoppel) from arguing that probable cause existed to arrest Plaintiff for harassment in the second degree (on the corner of Westmoreland Avenue and East Fayette Street), I reject that argument. In New York, collateral estoppel has two essential elements: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action" and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007).

Here, Judge Merrill's decision did not hold that Defendant lacked probable cause to arrest Plaintiff for harassment in the second degree. Rather, the decision held that Defendant "lacked statutory authority to arrest [Plaintiff]" for harassment in the second degree. *New York v. Williams*, DR # 06-243333, Decision and Order, at 2 (Syracuse City Ct., Aug. 30, 2006) (Merrill, J.) [attached at Dkt. No. 25, Part 3, at 1-4]. In any event, Defendant is correct that he cannot be bound by Judge Merrill's decision in *New York v. Williams*, because Defendant was not a party to that action and did not have a full and fair opportunity to contest the prior determination. (Dkt.

---

allegations . . . of the [plaintiff's] pleading . . . .").

26 *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

No. 27, Part 9, at 11-12 [Defs.' Memo. of Law].) *See Walcyzk v. Rio*, 496 F.3d 139, 151, n.13 (2d Cir. 2007) ("[N]umerous decisions [exist] declining to hold individual state officials bound, in their individual capacities, by determinations adverse to the state in prior criminal cases.") [collecting cases]; *Jenkins*, 478 F.3d at 85-86 (holding that ruling in New York state criminal proceeding that defendant's arrest was not supported by probable cause did not collaterally estop police from relitigating question when defendant sued them under 42 U.S.C. § 1983).

To the extent that Plaintiff argues that, because the arrest violated N.Y. C.P.L. § 140.10(1)(a), Defendant lacked probable cause to arrest Plaintiff (for purposes of his false arrest and false imprisonment claims), I reject that argument as well, for the reasons stated below in Part III.B. of this Report-Recommendation. Simply stated, the fact that an arrest violated N.Y. C.P.L. § 140.10(1)(a) does *not* mean that the arrest lacked probable cause under the Fourth Amendment.

Finally, to the extent that Plaintiff argues (for the purpose of his equal protection claim) that Defendant acted with the intent to discriminate against Plaintiff on the basis of his status as a parolee, a more detailed analysis is appropriate. As an initial matter, the basis of the equal protection claim asserted in Plaintiff's Complaint is that Defendant (allegedly) discriminated against Plaintiff *on the basis of his race*. *See*, *supra*, Part I.A. of this Report-Recommendation. Even when I construe Plaintiff's Complaint with the utmost of special solicitude, I can find no facts plausibly suggesting that Plaintiff is also alleging that Defendant discriminated against Plaintiff also *on the basis of his status as a parolee*. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) While Plaintiff makes some (immaterial) allegations regarding the impact of the arrest and charges on his status as a parolee, he does not allege that Defendant commented on (or even

knew about) Plaintiff's status as a parolee before the arrest. (*Id.*) Such allegations would have been necessary to give Defendant *fair notice* of Plaintiff's equal protection claim and the grounds upon which it rests.[27] The main purpose of this fair notice requirement is to "facilitate a proper decision on the merits."[28] A complaint that fails to comply with the requirement "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[29]

In any event, even if I were to construe Plaintiff's Complaint as alleging facts plausibly suggesting that Defendant discriminated against Plaintiff also *on the basis of his status as a parolee*, I would find that claim to be without merit based on the current record. To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally

---

27 *See* Fed. R. Civ. P. 8(a)(2); *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. 506, 512 (2002) [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

28 *Swierkiewicz*, 534 U.S. at 514 [internal quotation marks and citation omitted]; *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

29 *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.[30] Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court.[31] However, "[p]arolees do not constitute a suspect or quasi-suspect class, requiring heightened scrutiny for the purpose of equal protection analysis."[32] As a result, the alleged classification is subject to only "rational basis scrutiny."[33] Stated another way, to survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."[34] A State has (at the very least) a legitimate interest in arresting a parolee who is alleged to have committed an offense while on parole.[35] This is so even if the arrest strains the

---

30 *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).

31 *Travis*, 1998 U.S. Dist. LEXIS 23417, at *11.

32 *Bratton v. N.Y.S. Div. of Parole*, 05-CV-0950, 2008 WL 1766744, at *11 (N.D.N.Y. Apr. 14, 2008) (Mordue, C.J.) [citation omitted].

33 *Travis*, 1998 U.S. Dist. LEXIS 23417, at *11-12.

34 *Id.*; *Holley*, 2007 U.S. Dist. LEXIS 64699, at *23; *Coleman*, 363 F. Supp.2d at 902.

35 *Bratton*, 2008 WL 1766744, at *11 ("Parolees do not constitute a suspect or quasi-suspect class, requiring heightened scrutiny for purposes of equal protection analysis. . . . To the contrary, a parolee's status justifies [an] impingement upon his rights–in particular his Fourth Amendment rights–that would be unconstitutional if applied to ordinary citizens.") [citations omitted]; *see also U.S. v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) ("[L]ike probation, parole justifies some departures from traditional Fourth Amendment standards.") [citations omitted]; *Faheem-El v. Klincar*, 841 F.2d 712, 724 (7th Cir. 1988) ("[A] state [has] a compelling interest in monitoring and controlling a parolee's transition back into society [for purposes of both the Eighth Amendment Excessive Bail clause and the Fourteenth Amendment Due Process Clause].").

confines of N.Y. C.P.L. § 140.10(1).[36] More importantly, Plaintiff has adduced no evidence establishing that Defendant treated him differently than Defendant has treated non-parolees under similar circumstances.[37] As a result, even if Defendant's arrest of Plaintiff had been motivated by an underlying desire to cause Plaintiff to incur a parole violation,[38] there is no evidence that Defendant violated Plaintiff's equal protection rights under the Fourteenth Amendment.

Also without merit is Plaintiff's wholly conclusory allegation that Defendant discriminated against him on the basis of his race. The mere fact that Defendant is white and Plaintiff is black does not mean that Defendant's arrest of Plaintiff was motivated by Plaintiff's race. Moreover, Plaintiff has adduced no evidence establishing (nor even alleged facts plausibly suggesting) that Defendant treated Plaintiff differently than Defendant has treated white parolees under similar circumstances. (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 25 [Plf.'s

---

[36] *See*, *supra*, note 35 of this Report-Recommendation. I say "strains the confines of" instead of "violates" because I find that an officer of reasonable competence could have concluded that it was permissible–*under N.Y. C.P.L. § 140.10(1)(b)*–for Defendant to arrest Plaintiff under the circumstances in that Defendant had obtained probable cause to believe that Plaintiff had committed the misdemeanor of attempted assault in the third degree outside of his presence. *See*, *infra*, note 65 of this Report-Recommendation.

[37] Indeed, as Chief Judge Mordue (of this Court) has observed, since a parolee's status justifies an impingement upon his Fourth Amendment rights that would be unconstitutional if subjected upon ordinary citizens, that parolee is unable to plausibly allege that he is "similarly situated" (with respect to his Fourth Amendment rights) to ordinary citizens for purposes of the Equal Protection Clause of the Fourteenth Amendment. *Bratton*, 2008 WL 1766744, at *11.

[38] (*See* Dkt. No. 27, Part 6, at 25 [Ex. C to Doherty Decl., attaching page 24 of Plaintiff's deposition transcript, in which he states that "Officer Schultz was adamant about [the fact] that I was on parole. He said, this guy is on parole, we can get him"].)

Motion for Summary Judgment]; Dkt. No. 30 [Plf.'s Response].)[39] As a result, there is no evidence of either disparate treatment or discriminatory intent.

Because Plaintiff's equal protection claim is wholly devoid of merit (even when the record evidence is viewed in Plaintiff's favor), I find that summary judgment on this claim should be granted *against* him (i.e., in favor of Defendant) *sua sponte*. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) ("[I]n considering whether to grant summary judgment against [a] moving party *sua sponte*, the court is required to view the evidence in the moving party's favor."). I note that, because Plaintiff moved for summary judgment on this claim (and Defendant filed a cross-motion requesting dismissal of what he perceived to be all of Plaintiff's claims), Plaintiff was clearly on notice that he had to come forward with all of his evidence regarding this claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.") [citations omitted]. Alternatively, I base this recommendation of dismissal on a failure-to-state-a-claim analysis, pursuant to Fed. R. Civ. P. 12(b)(6).

For all of these reasons, I recommend that Plaintiff's motion for summary judgment be denied, and that his equal protection claim be *sua sponte* dismissed.

---

39 Indeed, in Paragraph 5 of his Rule 7.1 Response, Plaintiff asserts that Defendant "wanted to arrest [Plaintiff] because of [his] [p]arole [status]," suggesting that the motivation for the discrimination was not Plaintiff's race but his status as a parolee. (Dkt. No. 30, at 7 [Plf.'s Rule 7.1 Response].)

**B. Defendant's Cross-Motion for Summary Judgment**

The elements of a cause of action for false arrest brought under the Fourth Amendment and state common law are essentially the same: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.[40] Because false arrest is a type of false imprisonment, the two claims have the same elements.[41]

For the sake of argument, I will assume that Plaintiff has satisfied the first three elements of these two causes of action.[42] With regard to the fourth element, as Defendant correctly points

---

[40] *Weyant v. Okst*, 101 F.3d 845, 852-53 (2d Cir.1996) [citations omitted]; *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991) [citation omitted]; *Broughton v. New York*, 37 N.Y.2d 451, 456-57 (1975) [citation omitted].

[41] *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("The common law tort of false arrest is a species of false imprisonment, an action derived from the ancient common-law action of trespass that protects the personal interest of freedom from restraint of movement.") [internal quotation marks and citation omitted], *cert. denied*, 517 U.S. 1189 (1996); *Posr*, 944 F.2d at 96 ("In New York, the tort of false arrest is synonymous with that of false imprisonment.") [citations omitted].

[42] I note that I reject Defendant's argument that his handcuffing of Plaintiff was merely a "detention" and not an arrest. *See N.Y. v. Williams*, DR # 06-243333, Decision and Order, at 2 (Syracuse City Ct., Aug. 30, 2006) (Merrill, J.) (referring to the handcuffing as an "arrest," and rejecting the "characterization" of the handcuffing as a mere "detainment") [attached at Dkt. No. 25, Part 3, at 1-4; cited not for purposes of res judicata or collateral estoppel, but merely as persuasive authority]; *see also Travis v. Village of Dobbs Ferry*, 355 F. Supp.2d 740, 747 (S.D.N.Y. 2005) (concluding that the plaintiff was under arrest when she was "stopped on the street, removed from her car, frisked, handcuffed in the absence of any need to prevent a struggle, placed in the locked back seat of a police car, and driven to a police station"); *Howard v. Schoberle*, 907 F. Supp. 671, 678, n.3 (S.D.N.Y. 1995) (concluding that the defendant was under arrest when she and her mother were handcuffed in her apartment); *N.Y. v. Gordon*, 448 N.Y.S.2d 217, 220 (N.Y.S. App. Div., 3d Dept, 1982) ("[D]efendants were under arrest when handcuffed and placed in the police vehicle for transportation back to the robbery scene.") [internal quotation marks and citation omitted]. I also reject their argument that Plaintiff *consented* to the confinement by stating, "I'm not getting in the f***ing car unless I'm handcuffed." *See Evans v. Meyers*, 88-CV-0222, 1990 WL 43395, at *1 (N.D. Ill. March 29,

out, if there existed probable cause for the arrest, then Plaintiff may not recover on his false arrest and false imprisonment claims. (Dkt. No. 27, Part 9, at 8 [Defs.' Memo. of Law].)[43]

Construed with special leniency, Plaintiff's argument that no probable cause existed to arrest him for assault in the second degree[44] is, in essence, a five-part syllogism: (1) New York State law provides that harassment in the second degree is a "violation" (also known as an "offense"), as opposed to being a "crime";[45] (2) New York State law further provides that, when

---

1990) (granting partial summary judgment to plaintiff with regard to liability on her false arrest claim under 42 U.S.C. § 1983 even though immediately before the arrest she had stated to the officer, "[Y]ou will have to arrest me"); *cf. Vasquez v. Salisbury Tp. Police Dept*, 98-CV-2655, 1999 636662, at *2 (E.D. Pa. Aug. 19, 1999) (proceeding to an analysis of the merits of the officer's probable-cause defense with regard to the plaintiff's false arrest claim under 42 U.S.C. § 1983, and thus implicitly finding that the plaintiff had not consented to the arrest, even though immediately before the arrest he had stated to the officer, "[T]he only way I'm going to talk to you is if you arrest me" and stuck his hands out).

[43] *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir.1999) ("If probable cause [exists], no constitutional violation of the plaintiff's Fourteenth Amendment rights has occurred.") [citations omitted]; *Weyant*, 101 F.3d at 852 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") [internal quotation marks and citation omitted]; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest when the arresting officer had probable cause."); *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1988) ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution.") [citation omitted]; *Feinberg v. Saks & Co.*, 443 N.Y.S.2d 26, 27 (N.Y. 1981) ("[T]he general rule [is] that a defendant who has 'probable cause' to subject a plaintiff to a 'reasonable detention' has a complete defense to a cause of action for false arrest or imprisonment . . . .") [citation omitted].

[44] Under New York State law, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . ." N.Y. P.L. § 240.26.

[45] *See* N.Y. P.L. § 240.26 ("Harassment in the second degree is a violation."); N.Y. P.L. § 10.00(3) ("'Violation' means an offense, other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed."); *cf.* N.Y. C.P.L. § 1.20(39) ("'Petty offense' means a violation or a traffic infraction."); N.Y. P.L. §

no arrest warrant has been issued, "a police officer may arrest a person for . . . [an] offense [only] when he has reasonable cause to believe that such person has committed such offense *in his presence*";[46] (3) here, no arrest warrant was issued, and Defendant was not present when Plaintiff (allegedly) committed assault in the second degree; (4) therefore, under the circumstances, New York State law prohibited Defendant from arresting Plaintiff for assault in the second degree (on the corner of Westmoreland Avenue and East Fayette Street); and (5) because Defendant's arrest of Plaintiff for assault in the second degree violated New York State law, Defendant lacked probable cause to arrest Plaintiff for assault in the second degree under the Fourth Amendment. (*See* Dkt. No. 25, Part 2, at 1-3 [Plf.'s Memo. of Law]; Dkt. No. 25, Part 1, at 1-3 [Plf.'s Rule 7.1 Statement]; Dkt. No. 25, Part 3, at 1-4 [Ex. A to Plf.'s Decl., attaching Decision and Order of Hon. Jeffrey R. Merrill]; Dkt. No. 30, at 4-5 [Plf.'s Opp. Memo of Law].)

The problem with Plaintiff's argument is the fifth part, which consists of a non-sequitur. The fact that an arrest violated the New York State statute to which Plaintiff refers (i.e., N.Y. C.P.L. § 140.10[1][a]) does *not* mean that the arrest lacked probable cause under the Fourth Amendment. *See Hotaling v. LaPlante*, 167 F. Supp.2d 517, 522-23 (N.D.N.Y. 2001) (Hurd, J.) [citations omitted]; *Ramos v. City of New York*, 05-CV-3155, 2006 U.S. Dist. LEXIS 73518, at *19-20 (S.D.N.Y. Oct. 6, 2006).[47] As Judge Hurd explained in *Hotaling v. LaPlante*,

---

10.00(6) ("'Crime' is either a misdemeanor or a felony.").

[46] N.Y. C.P.L. § 140.10(1)(a) [emphasis added]; *cf.* N.Y. C.P.L. § 140.10(1)(b) ("[A] police officer may arrest a person for . . . [a] *crime* when he has reasonable cause to believe that such person has committed such crime, whether in his presence *or otherwise*.") [emphasis added].

[47] *Cf. Cooper v. California*, 386 U.S. 58, 61 (1967) (whether a seizure is reasonable under the Fourth Amendment is a different question than whether a seizure is authorized by state

> In addition to his arguments addressed to the issue of probable cause, Hotaling argues that the arrest [for harassment in the second degree under N.Y. P.L. § 240.26] violated his *Fourth Amendment* rights because it was effected in violation of *New York Criminal Procedure Law § 140.10(1)*, which requires a police officer to obtain a warrant before arresting a person for a misdemeanor that did not occur in the officer's presence. . . . [T]his argument must fail. There is no requirement under the *Fourth Amendment* that a police officer personally witness the conduct upon which he or she relies to establish the existence of probable cause. . . . In considering a plaintiff's claims under *Section 1983*, the question is whether there has been a violation of a federal right, which here is claimed to be the *Fourth Amendment*. . . . Because Tpr. LaPlante did have a sufficient factual basis to conclude that probable cause existed for the arrest of Hotaling, the mere fact that he did not personally witness the alleged conduct and may have acted in violation of state law is not sufficient to establish a violation of the Fourth *Amendment*.

*Hotaling v. LaPlante*, 167 F. Supp.2d 517, 522-23 (N.D.N.Y. 2001) (Hurd, J.) [emphasis in original; internal quotation marks and citations omitted]. Similarly, as the Southern District of New York explained in *Ramos v. City of New York*,

> Plaintiff also argues that the defendants are collaterally estopped from denying the lack of probable cause by the Appellate Division opinion, which concluded that the police lacked 'reasonable cause to authorize defendant's arrest on a violation harassment charge involving events which took place outside the presence of the arresting officer.' . . .

---

law); *U.S. v. Becerra-Garcia*, 397 F.3d 1167, 1174 (9th Cir. 2005) ("[W]e . . . have declined to consider state law in determining the reasonableness of seizures [under the Fourth Amendment].") [citation omitted]; *Elkins v. U.S.*, 364 U.S. 206, 224 (1960) ("[The test of whether a seizure violates the Fourth Amendment] is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."); *U.S. v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995) ("[W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state law. . . . An arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause."); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) ("[A] civil rights action [under § 1983] will not lie for a warrantless misdemeanor arrest in violation of state law."); *Street v. Surdyka*, 492 F.2d 368, 370-71 (4th Cir. 1974) ("Even if Officer Surdyka violated Maryland arrest law, he cannot be liable under section 1983 unless he also violated the federal constitutional law governing warrantless arrests.").

> However, . . . the language quoted above deals with a state law requirement that warrantless arrests for non-felony crimes may not be made unless the officer has reasonable cause to believe the crime was committed in the officer's presence. *See* N.Y. C.P.L. § 140.10(1)(A) . . . . Therefore, the cited language of the Appellate Division was . . . no[t] addressed to the question of whether there was probable cause to believe a crime had been committed.

*Ramos v. City of New York*, 05-CV-3155, 2006 U.S. Dist. LEXIS 73518, at *19-20 (S.D.N.Y. Oct. 6, 2006).

In addition to having been expressly stated in the cases cited above, this point of law has been *implicitly* recognized by the Second Circuit, the Southern District of New York, and District Judge Norman A. Mordue (of this Court). *See Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (in determining whether probable cause existed for warrantless arrest of plaintiff for harassment in the second degree under N.Y. P.L. § 240.26[3]–a "violation" under New York State law–police officer was entitled to rely on allegations of victim that trespass had occurred, even though trespass did not occur in presence of police officer); *Mason v. Town of New Paltz Police Dep't*, 103 F. Supp.2d 562, 566 (N.D.N.Y. 2000) (Mordue, J.) (in determining whether probable cause existed for warrantless arrest of plaintiff for trespass under N.Y. P.L. § 140.05–a "violation" under New York State law–police officer was entitled to rely on allegations of victim that trespass had occurred, even though the trespass did not occur in presence of police officer); *accord*, *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 353, 355 (S.D.N.Y. 1992) (trespass under N.Y. P.L. § 140.05) [citation omitted], *aff'd*, 993 F.2d 1534 (2d Cir. 1993).

This point of law appears eminently sensible for two reasons. First, Section 1983 provides, in pertinent part, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by *the Constitution and laws*, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to United States Constitution and *federal* laws.[48] A violation of a state law, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[49]

Second, this point of law is consistent with the *Erie* Doctrine, which provides that, in an action in federal court–other than an action governed by the Federal Constitution or by Acts of Congress–the substantive law to be applied is *State* substantive law, while the procedural law to be applied is *federal* procedural law.[50] Because the current action is governed by the Federal

---

[48] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

[49] *See Doe v. Conn. Dept. of Child & Youth Servs*., 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") [citation omitted]; *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for [prison] disciplinary hearings . . . do not rise to the level of constitutional violations.") [citation omitted]; *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]); *see also*, *supra*, note 47 of this Report-Recommendation (collecting cases from outside Second Circuit).

[50] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996) ("Under the Erie

Constitution (e.g., the Fourth Amendment) and an Act of Congress (i.e., 42 U.S.C. § 1983), the substantive law to be applied is *not* the substantive law of New York State.[51] Even if the substantive law to be applied were the law of New York State, the law to which Plaintiff refers is not part of New York State's *substantive* law but its *procedural* law. *See* N.Y. Criminal *Procedure* Law § 140.10(1)(a) [emphasis added]. Furthermore, the State procedural law to which Plaintiff refers conflicts with the corresponding federal law on the subject.

In particular, N.Y. C.P.L. § 140.10(1)(a)–which prohibits an officer from arresting a person for an "offense" when he lacks probable cause to believe that such person has committed that "offense" in his presence–conflicts with the federal procedural rule that permits such arrests (for purposes of the Fourth Amendment) as long as the officer possesses probable cause to believe such a person committed the "offense" in the his presence *or otherwise*. *See*, *infra*, notes 55, 56 and 59 (and accompanying text) of this Report-Recommendation.

More specifically, pursuant to the federal law regarding probable cause, "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information

---

doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

[51] While it is true that federal courts addressing a false arrest claim asserted against a state official under the Fourth Amendment "look to" a state's substantive law to define the elements of a false arrest claim (and the elements of the crime for which the plaintiff was arrested), ultimately the substantive law that is being *applied* is the Fourth Amendment of the United States Constitution. *Russo v. City of Bridgeport*, No. , 2007 U.S. App. LEXIS 16171, at *14-16 (2d Cir. Feb. 27, 2007) (stating that court was "look[ing] to" the state's substantive criminal law to analyze plaintiff's false arrest claim, but that the claim was "arising under the Fourth and Fourteenth Amendments") [citation omitted]. This is because "[n]aturally, the *threshold question* [in such a case] is whether there has been a[n] [unreasonable] 'seizure' . . . for purposes of the *Fourth Amendment*." *Finigan v. Marshall*, 473 F. Supp.2d 348, 354 (N.D.N.Y. 2007) (Hurd, J.) [emphasis added].

sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989) [citations omitted].[52] "The existence of probable cause must be determined on the basis of the totality of the circumstances." *Calamia*, 879 F.2d at 1032.[53] In making the probable cause determination, the Court "consider[s] the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) (citing *Lowth v. Town of Cheektowage*, 82 F.3d 563, 569 [2d Cir.1996]).[54]

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) [internal quotation mark and citation omitted].[55] More specifically, when the

---

52 *See also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir.1999) ("Officers have probable cause to arrest when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.") [internal quotation marks and citation omitted].

53 *See also Hahn v. County of Otsego*, 820 F. Supp. 54, 58 (N.D.N.Y. 1993) (Hurd, M.J.) ("[A] probable cause determination . . . [turns on the] probability of criminal activity, based on the totality of circumstances . . . .") [citation omitted].

54 *See also Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir. 1990) ("For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure.") [citation omitted].

55 *Accord, Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) [citations omitted]; *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002) [internal quotation marks and citation omitted]; *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) [citation omitted], *aff'd*, 993 F.2d 1534 (2d Cir. 1993); *McZorn v. Endicott Police Dep't*, 06-CV-0033, 2008 WL 163581, at *7 (N.D.N.Y. Jan. 16, 2008) (McAvoy, J.) [citations omitted]; *Strawn v. Holohan*, 04-CV-1292, 2008 WL 65586, at *4 (N.D.N.Y. Jan. 4, 2008) (Sharpe, J.) [citation omitted]; *Kampfer v. Pitcher*, 95-CV-0214, 1996 WL 31161, at *3 (N.D.N.Y. Jan. 19, 1996)

information received is from a putative victim, "probable cause exists . . . unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) [citation omitted].[56]

A variety of circumstances might corroborate a putative victim's veracity, including the issuance of a sworn complaint by the putative victim.[57] However, while such a sworn complaint may be sufficient (and perhaps even the desirable or preferred method) to corroborate a putative victim's veracity, such a sworn complaint is not necessary to do so.[58] Rather, a putative victim's veracity may be corroborated also by such things as (1) the officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, (3) the putative victim's identification of the plaintiff by name and physical description, and (4) incriminating statements by the plaintiff.[59] Where the facts surrounding the

---

(Scullin, J.) [citation omitted].

[56] *Accord*, *U.S. v. Washington*, No. 06-3406, 270 F. App'x 26, 27 (2d Cir. March 19, 2008) [citation omitted]; *Panetta*, 460 F.3d at 395 [citation omitted].

[57] *See*, *e.g.*, *Singer*, 63 F.3d at 118 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.") [citations omitted], *cert. denied*, 517 U.S. 1189 (1996); *accord*, *Lee v. Sandberg,* 136 F.3d 94, 102-03 (2d Cir. 1997); *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) [citation omitted].

[58] *Stokes v. City of New York*, 05-CV-0007, 2007 WL 1300983, at *5 (E.D.N.Y. May 3, 2007) ("[T]the Second Circuit and other courts have found probable cause to exist where, in the absence of circumstances raising doubts as to the victim's veracity, the police received information directly from a purported victim of a crime without a formal written complaint.") [citations omitted].

[59] *See*, *e.g.*, *Curley*, 268 F.3d at 70 (affirming grant of summary judgment to defendants with regard to plaintiff's false arrest claim, because probable cause existed to arrest plaintiff for assault even though victim had not issued a sworn complaint, where [1] victim had

arrest are uncontroverted, the determination as to whether probable cause existed may be made by the court as a matter of law. *Weyant*, 101 F.3d at 852.

Here, when Defendant first arrested Plaintiff, he was in possession of the following five facts:

1. On May 17, 2006, before Defendant spoke to Ms. Adams, Ms. Adams made a telephone call to the police complaining of harassment;

2. Shortly thereafter, at approximately 1:40 p.m., when Defendant spoke to Ms. Adams (at 401 Ellis Street), she (1) identified Plaintiff by both name and physical description, (2) alleged that earlier that day Plaintiff had argued with her in his home, had become angry with

---

orally told defendants that plaintiff had assaulted him and [2] the circumstances–which included the victim's "visible injuries"–did not raise doubt as to victim's veracity); *Jaegly v. Couch*, 439 F.3d 149, 151-53 (2d Cir. 2006) (affirming grant of summary judgment by N.D.N.Y. [Hurd, J.], in favor of defendants with regard to plaintiff's false arrest claim, because probable cause existed to arrest plaintiff for second degree harassment even though victim had not issued a sworn complaint, where [1] victim had orally told defendant that plaintiff had committed acts constituting second degree harassment, and [2] the circumstances–which included the victim's description of events and an incriminating statement by plaintiff–did not raise doubt as to victim's veracity); *Washington*, 270 F. App'x at 27 (police officers possessed probable cause to arrest defendant based on "police report of a burglary [on Second Street] in which the victim identified him by name and physical description as the perpetrator" and "[defendant], himself, established the reliability of the victim's account when he admitted that he was involved in an 'incident' on Second Street"); *Shain v. Ellison*, 273 F.3d 56, 60, 67-68 (2d Cir. 2001) (affirming grant of summary judgment to defendants with regard to plaintiff's false arrest claim, because probable cause existed to arrest plaintiff for assault even though victim had not issued a sworn complaint, where [1] victim had orally told defendant that plaintiff had entered her bedroom, refused her several requests to leave, and threatened to rape her, and [2] "trustworthy" nature of victim's account of events did not raise doubt as to victim's veracity); *Pravda v. City of Albany, N.Y.*, 956 F. Supp. 174, 184-85 (N.D.N.Y. 1997) (Scullin, J.) (probable cause for arrest existed based on unsworn allegation of putative victim at scene, which was consistent with police officer's observation of putative victim's physical injury); *Lasher v. City of Schenectady*, 02-CV-1395, 2004 WL 1732006, at *3-4 (N.D.N.Y. Aug. 3, 2004) (McAvoy, J.) (probable cause for arrest existed based on unsworn allegations of witness at scene, which were consistent with two telephone calls to police station).

her, and had threatened her with bodily harm, (3) alleged that Plaintiff had then struck her in the face with an open hand, causing her nose to bleed and her cheeks to hurt, and (4) alleged that Plaintiff had then stated that he would "kill her before the police got there";

3. Not long after the alleged incident, using Ms. Adams' description of Plaintiff, Officer Dotson located Plaintiff on the corner of Westmoreland Avenue and East Fayette Street, which was near the incident;

4. When Defendant subsequently spoke to Plaintiff, he noticed that Plaintiff's eyes were watery and red, leading him to believe that Plaintiff was under the influence of drugs; and

5. When Defendant told Plaintiff to have a seat in a police car, Plaintiff (in what might be reasonably perceived as being an argumentative fashion) said, "I'm not getting in the f***ing car unless I'm handcuffed."

Based upon these undisputed facts, I find that no reasonable fact-finder could conclude that, when Defendant handcuffed Plaintiff on May 17, 2006, at approximately 1:40 p.m. (on the corner of Westmoreland Avenue and East Fayette Street), Defendant lacked probable cause to believe that Plaintiff had committed harassment in the second degree against Mikuel Adams earlier that day (at 401 Ellis Street).[60] Specifically, I find that the veracity of Ms. Adams' unsworn allegations were corroborated by (1) the consistency and detail of Ms. Adams' description of events, (2) Ms. Adams' identification of Plaintiff by name and physical description, (3) Plaintiff's presence in the vicinity of the alleged incident shortly after the

---

[60] *See* N.Y. P.L. § 240.26 ("A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . .").

incident, and (4) Defendant's observation of Plaintiff's demeanor and physical appearance.

Because the existence of probable cause is a complete defense to claims of false arrest and false imprisonment, the Court need proceed no further in analyzing those claims.[61] However, in the interest of thoroughness, I will briefly review the merits of Defendant's alternative argument that he is protected from liability, with respect to Plaintiff's false-arrest and false-imprisonment, by the doctrine of qualified immunity.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

---

[61] *See*, *supra*, note 43 of this Report-Recommendation.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[62] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[63] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant’s actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[64] As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

---

62 *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

63 *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (“[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

64 *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

*Malley*, 475 U.S. at 341.[65]

Here, I find that officers of reasonable competence could have disagreed on the legality of Defendant's actions. In particular, I find that an officer of reasonable competence could have concluded that it was lawful–for purposes of the Fourth Amendment–for Defendant to arrest Plaintiff for assault in the second degree under the circumstances. (I make this finding for the reasons stated above.) Indeed, I find that an officer of reasonable competence could have concluded that it was permissible–*under N.Y. C.P.L. § 140.10(1)(b)*–for Defendant to arrest Plaintiff under the circumstances because Defendant had obtained probable cause to believe that Plaintiff had committed the misdemeanor of attempted assault in the third degree outside of his presence.[66] *See* N.Y. C.P.L. § 140.10(1)(b) ("[A] police officer may arrest a person for . . . [a] crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence *or otherwise*.") [emphasis added]; N.Y. P.L. § 10.00(6) ("'Crime' is either

---

65 *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

66 N.Y. P.L. § 120.00 ("A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person . . . . or . . . [h]e recklessly causes physical injury to another person . . . . Assault in the third degree is a class A misdemeanor."); N.Y. P.L. § 110.00 ("A person is guilty of attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."); *see, e.g., N.Y. v. Yousef*, No. 2005-177, 2008 WL 2928361, at *1 (N.Y. Sup. Ct., Feb. 26, 2008) (affirming conviction for harassment in second degree and attempted assault in third degree where defendant "punched victim [once] in the face with his fist causing her nose to bleed, substantial pain, fear of further physical injury, alarm and annoyance"). I note that authority exists for the proposition that Defendant had obtained probable cause to believe that Plaintiff had committed the misdemeanor of assault in the third degree (i.e., not *attempted* assault in the third degree). *See Kruppenbacher v. Mazzeo*, 86-CV-0040, 744 F. Supp. 402, 406 (N.D.N.Y. 1990) (Munson, J.) (observation of putative victim's "swollen lip" and hearing putative victim's oral allegation that plaintiff had punched the victim would have given officer probable cause to arrest plaintiff for assault in the third degree).

a misdemeanor or a felony.").

For all of these reasons, I recommend that the Court dismiss Plaintiff's false arrest and false imprisonment claims.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 25) be **DENIED**, and that his equal protection claim be *sua sponte* **DISMISSED**; and it is further

**RECOMMENDED** that Defendant's cross-motion for summary judgment (Dkt. No. 27) be **GRANTED**, and that Plaintiff's false arrest and false imprisonment claims be **DISMISSED**.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance**.[67]

---

[67] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: September 22, 2008
Syracuse, New York

George H. Lowe
United States Magistrate Judge

1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].